# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RAVENWHITE LICENSING LLC,<br><br>      Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.,<br><br>      Defendants. | Case No. 2:23-CV-0423-JRG-RSP<br>LEAD CASE<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' RENEWED MOTION TO DISMISS AMENDED COMPLAINT BASED ON IMPROPER VENUE

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................... 2

III. LEGAL STANDARD............................................................................................. 5

IV. ARGUMENT: VENUE IS IMPROPER UNDER SECTION 1400(b) ................. 6

    A. The First Prong of Section 1400(b): THD and HDUSA Do Not "Reside" in the Eastern District of Texas. ................................................. 6

    B. The Second Prong of Section 1400(b) ......................................................... 7

        1. Neither THD Nor HDUSA Has "Committed Acts of Infringement" in the Eastern District of Texas. ............................ 7

V. CONCLUSION................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeritas, LLC v. Darden Corp.*,
  No. 6:20-CV-00938-ADA, 2021 WL 4868430 (W.D. Tex. Oct. 18, 2021)..............................6

*AlexSam, Inc. v. Simon Prop. Grp. (Texas), L.P.*,
  No. 2:19-CV-00331-JRG, 2021 WL 9816147 (E.D. Tex. Aug. 19, 2021)..............................6

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
  No. 4:19-cv-288-ALM-KPJ, 2020 WL 2478546 (E.D. Tex. Feb. 24, 2020),
  *report and recommendation adopted*, 2020 WL 1465894, *aff'd* 6 F.4th 1283
  (Fed. Cir. 2021).......................................................................................................................7

*Blackbird Techs. LLC v. Cloudflare, Inc.*,
  No. 17-283, 2017 WL 4543783 (D. Del. Oct. 11, 2017)........................................................10

*Celgene Corp. v. Mylan Pharmaceuticals, Inc.*,
  17 F.4th 1111 (Fed. Cir. 2021) .....................................................................................5, 7, 13

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)................................................................................................5

*Deb v. SIRVA, Inc.*,
  832 F.3d 800 (7th Cir. 2016) ...................................................................................................6

*Fourco Glass Co. v. Transmirra Products Corp.*,
  353 U.S. 222 (1957)...............................................................................................................11

*Freudensprung v. Offshore Tech. Servs., Inc.*,
  379 F.3d 327 (5th Cir. 2004) ...................................................................................................7

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017).............................6, 12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ..............................................................................................6, 13

*SEVEN Networks, LLC v. Google LLC*,
  315 F. Supp. 3d 933 (E.D. Tex. 2018)...................................................................................10

*Snyders Heart Valve LLC v. St. Jude Medical S.C., Inc.*,
  No. 4:16-cv-00812, 2018 WL 3099709 (E.D. Tex. June 25, 2018) .........................................6

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
  581 U.S. 258 (2017).................................................................................................5, 6, 11, 13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)................................................................................................6

**Statutes**

28 U.S.C. § 1391(c) ......................................................................................................................11

28 U.S.C. § 1400(b) ............................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(3).........................................................................................................1, 5, 6

**I.      INTRODUCTION**

Apparently acknowledging that its original allegations were not even arguably tied to purportedly infringing activity in this District, Plaintiff RavenWhite Licensing LLC ("RavenWhite") filed an Amended Complaint on December 6, 2023 laden with unsubstantiated claims regarding the functionality of Home Depot's "in-store servers and/or edge servers located in this District." *See* D.I. 24, Amended Complaint, ¶¶ 20-25 ("FAC").  But by RavenWhite's own admission, the asserted patents concern client-server communications (U.S. Patent No. 10,594,823 (the "'823 Patent") and online marketing systems targeting users (U.S. Patent No. 11,562,402 (the "'402 Patent"),[1] and no Home Depot servers in the Eastern District of Texas ("EDTX") have any customer interface or provide any content to the Home Depot website or mobile app.   The systems and servers that arguably perform any client device identification or user advertising functionality related to the asserted patents are all located, maintained, and controlled entirely outside of this District.  Declaration of Andrew Fritts, dated Jan. 8, 2024, ¶ 7 ("Fritts Decl.")

RavenWhite carefully drafted its patent claims toward computer systems and processors, and attempted to avoid claims with elements directed to both systems <u>and</u> users which might trigger allegations of divided infringement.  In turn, if those systems and processors are located exclusively in a different District, then venue is not appropriate in EDTX because there can be no "act of infringement" here under 28 U.S.C. § 1400(b).  Accordingly and pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, this Court should dismiss RavenWhite's Amended Complaint for improper venue.

---

[1] FAC, ¶ 48-49.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 2023, RavenWhite filed its initial Complaint against The Home Depot, Inc. ("THD") and Home Depot U.S.A., Inc. ("HDUSA") (collectively, "Defendants" or "Home Depot") alleging infringement of U.S. Patent No. 10,594,823 ("the "'823 Patent") and U.S. Patent No. 11,562,402 (the "'402 Patent") (collectively, the "Asserted Patents"). *See generally* D.I. 1, RavenWhite's Complaint. On November 22, 2023, THD and HDUSA moved to dismiss RavenWhite's Complaint with prejudice based on improper venue. *See* D.I. 16, Motion to Dismiss Based on Improper Venue ("Initial Motion"). Thereafter, RavenWhite filed the instant Amended Complaint on December 6, 2023.

RavenWhite's Amended Complaint adds new allegations relating to venue, but those new allegations are untrue. While RavenWhite alleges that "[o]n information and belief, Defendants have committed infringement of the Patents-in-Suit in this District" (FAC, p. 15, ¶ 38), the allegations of infringement are not targeted at physical products such as hardware or light bulbs sold in Home Depot stores located in the EDTX. Instead, they allegedly concern the operations of Home Depot servers and systems that perform user advertising and client device identification functionality through Home Depot's website and mobile app. But there are no servers or systems which Home Depot owns, operates, or contracts with third parties to operate in the EDTX which perform the functionality set forth in the Amended Complaint. Fritts Decl., ¶ 7. Those servers and systems are located exclusively outside the District. *Id.*; Declaration of Kevin Reddick, dated November 16, 2023, D.I. 16 ("Reddick Decl."), ¶ 10.

More specifically, asserted claim 1 of the '823 Patent is directed to "**[a] system comprising one or more processors**" that performs the following steps (paraphrasing):

- **Receive** a network resource request from a client device;

2

- Based on that network resource request corresponding to a cookie**, determine information** that was encoded and stored in the client device;

- **Perform an identification** of at least one of the client device and the user of the client device using that cookie;

- **Perform a second identification** of at least one of the client device and the user of the client device;

- **Perform a determination** based on the presence or absence of network resource requests; and

- **A memory coupled to the one or more processors** and configured to provide the one or more processors with instructions.

The instrumentalities accused by RavenWhite of infringing this claim are the computer networks and "servers through which Home Depot operates the Home Depot website." FAC, p. 17-18, ¶ 51-52. "The Home Depot system comprises one or more processors configured to use cookies and other tracking technologies on its websites when receiving and responding to client requests…" *Id.* at p. 19, ¶ 56. RavenWhite also alleges that the "in-store servers and/or edge servers located in this District" (FAC, p. 7, ¶ 22) have one or more of these processors—but this is false. The in-store servers have no network connection to Home Depot's website, Home Depot's mobile application, or any interface available to customers or through which customers interact. Fritts Decl. ¶ 4. Likewise, the in-store servers do not receive cookies from customer devices and do not cause anything to be initiated, displayed, or stored on customer devices. Fritts Decl. ¶ 5.

Similarly, asserted claim 19 of the '402 Patent is directed to "[a] computer program product embodied in a non-transitory computer readable storage medium and comprising computer instructions" for (paraphrasing):

- **Determining** first and second quality levels associated with user profiles, wherein at least one of those quality levels is based on a conversion assessment based on historical click behavior;

3

- **Determining** indications of interest in first and second categories of information; and
- **Displaying** an advertisement to the user based in part on at least one of the first quality level or the second quality level.

The allegations of infringement of the '402 patent concern the Retail Media+ computer program product, which includes "the Home Depot search engine" and allegedly displays advertisements to users based on certain user attributes. FAC, p. 34-37, ¶¶ 81, 86.  Again, RavenWhite alleges that the "in-store servers and/or edge servers located in this District…have one or more processors configured to process and collect information about searches and purchases performed on customer devices," (FAC, p. 8, ¶ 25) and "display an advertisement to the user based at least in part on at least one of the first quality level or the second quality level," (FAC, p. 8, ¶ 24) but this is again baseless given those servers' absence of any network connection or customer interface.  The in-store servers do not collect information about searches or purchases made on customer devices and do not interface in any way with customer user accounts or profiles created on Home Depot's website or mobile application.  Fritts Decl. ¶ 4-5.  Instead, the servers or systems that process transactions and furnish content on Home Depot's website and mobile application are located exclusively outside the EDTX.  Fritts Decl. ¶ 7; Reddick Decl. ¶ 10.

Neither of the Defendants reside in this District; they are Delaware corporations with respective principal places of business located at 2455 Paces Ferry Road, Atlanta, Georgia.  Reddick Decl. ¶¶ 2, 7.   RavenWhite also alleges that venue is proper in this District because Defendants "maintain regular and established places of business, and a continuous physical presence within the District" (FAC, p. 14-15, ¶ 37), but these assertions are incorrect at least as to THD.  *See generally* Reddick Decl. ¶¶ 3-6.  Likewise and as set forth in detail below, neither THD nor HDUSA even arguably commit an "act of infringement" for venue purposes since there

4

are no servers or systems which Home Depot owns, operates, or contracts with third parties to operate in the EDTX which perform the functionality set forth in the Amended Complaint. Fritts Decl., ¶ 7. Indeed, management of the servers and systems which RavenWhite accuses of infringement—and the furnishing of content on the Home Depot website—is coordinated at Home Depot's headquarters in Atlanta, GA. *Id.* ¶ 9.

RavenWhite was apparently formed as a Delaware corporation on June 13, 2023. *See* https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (State of Delaware Department of State: Division of Corporations Entity Details listing for RavenWhite Licensing LLC). RavenWhite's office street address is listed as 838 Walker Road Suite 21-2, Dover, DE 19904, but RavenWhite does not appear to conduct any business from that office aside from the filing of lawsuits. *See, e.g.*, D.I. 1, Complaint; D.I. 24, FAC. Since its formation on or about June 13, 2023, RavenWhite does not appear to have designed, developed, made, or sold any products, or attempted to do so.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows defendants to move to dismiss based on improper venue. Fed. R. Civ. P. 12(b)(3). To establish that venue is proper, a plaintiff pleading patent infringement must show that a corporate defendant either (1) resides—*i.e.*, is incorporated—in this District, or (2) has both maintained a regular and established place of business, *and* has committed acts of infringement, in this District. 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 259-263 (2017). A "regular and established place of business" must be: (1) "a physical place in the district"; (2) "regular and established"; and (3) "the place of the defendant." *Celgene Corp. v. Mylan Pharmaceuticals, Inc.,* 17 F.4th 1111, 1122 (Fed. Cir. 2021); *In re Cray Inc.*, 871 F.3d 1355, 1360-64 (Fed. Cir. 2017).

5

A plaintiff must meet its burden of establishing that venue is proper under Section 1400(b). *See Snyders Heart Valve LLC v. St. Jude Medical S.C., Inc.*, No. 4:16-cv-00812, 2018 WL 3099709, at *6 (E.D. Tex. June 25, 2018) (citing *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013-1014 (Fed. Cir. 2018)). In the 12(b)(3) context, the well-pleaded facts in a plaintiff's complaint are initially accepted as true, but only to the extent that they are uncontroverted by a defendant's affidavit. *See Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017) (collecting cases); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809–10 (7th Cir. 2016). Moreover, plaintiff's conclusory allegations, even if uncontroverted, are not given credit. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *see also AlexSam, Inc. v. Simon Prop. Grp. (Texas), L.P.*, No. 2:19-CV-00331-JRG, 2021 WL 9816147, at *1 (E.D. Tex. Aug. 19, 2021) (in reviewing a Rule 12(b)(3) motion, "the court need not credit conclusory allegations"); *Aeritas, LLC v. Darden Corp.*, No. 6:20-CV-00938-ADA, 2021 WL 4868430, at *1 (W.D. Tex. Oct. 18, 2021) ("Yet a plaintiff may not simply rely on legally conclusory statements to survive a motion to dismiss [for improper venue].").

**IV.   ARGUMENT: VENUE IS IMPROPER UNDER SECTION 1400(b)**

    **A.   The First Prong of Section 1400(b): THD and HDUSA Do Not "Reside" in the Eastern District of Texas.**

RavenWhite acknowledges that THD and HDUSA are Delaware corporations. FAC, p. 2, ¶¶ 5-6; *accord* Reddick Dec. ¶¶ 2, 7. Thus, THD and HDUSA do not "reside" in this District for purposes of Section 1400(b)'s first prong. *TC Heartland*, 137 S. Ct. 1514 at 1517 (holding that "a domestic corporation 'resides' only in its state of incorporation for purposes of the patent venue statute [Section 1400(b)]"); *id.* at 1521 ("[a]s applied to domestic corporations, 'reside[nce]' in §1400(b) refers only to the state of incorporation.").

6

### B. The Second Prong of Section 1400(b)

As neither THD nor HDUSA "reside" in the District under the first prong of §1400(b), venue can be proper in this District only if both parts of the second prong of §1400(b) apply. But neither THD nor HDUSA meet the requirements of the second prong. First, as set forth in detail in its Initial Motion THD does not have a "regular and established place of business" in the District.[2] Second, RavenWhite's new allegations in its FAC are wholly baseless, and neither THD nor HDUSA have committed – or could have committed – acts of infringement in this District.

#### 1. Neither THD Nor HDUSA Has "Committed Acts of Infringement" in the Eastern District of Texas.

RavenWhite is unable to meet its burden under the second prong of the patent venue statute for *either* THD or HDUSA because it fails to allege any nonconclusory facts

---

[2] As set forth in detail in its Initial Motion, THD is a mere holding company for its direct and indirect subsidiaries and does not have a "regular and established place of business" in this District.  THD has no street address or mailing address in this District, has no real property, office, residence, building, or other physical presence in this District, has no employees resident in this District, provides no products or services to the public in this District, and does no business in this District.  *See generally* Reddick Decl., ¶¶ 3-6.  *Accord Andra Grp., LP v. Victoria's Secret Stores, LLC,* No. 4:19-cv-288-ALM-KPJ, 2020 WL 2478546, at *2 (E.D. Tex. Feb. 24, 2020), *report and recommendation adopted*, 2020 WL 1465894, *aff'd* 6 F.4th 1283 (Fed. Cir. 2021).  RavenWhite's Amended Complaint alleges that Home Depot's annual report refers to THD and its consolidated subsidiaries together (FAC, ¶ 33) and that that "[THD and HDUSA] function as an integrated organization and a single business enterprise in connection with [the activities described in the Amended Complaint]," (*Id*, ¶ 8), but the Fifth Circuit has long held these types of conclusory allegations to be insufficient.  *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346–47 (5th Cir. 2004) ("Although Freudensprung insists that WWAI is indistinguishable from Willbros Group, he only offers as evidence various printouts from websites—primarily SEC filings related to all the Willbros entities, which are collectively referred to in these documents as 'The Company.' While such documents might arguably establish the existence of some corporate relationship between WWAI and the other Willbros entities, they are insufficient to overcome the presumption of corporate separateness."); *Celgene Corp.,* 17 F. 4th at 1125, quoting *Andra Grp.,* 6 F.4th 4th at 1289 ("where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes").

demonstrating that either entity has committed acts of infringement in this District.³ The claims of the Asserted Patents unambiguously focus on the back-end functionality of a computer system that, if infringing, would necessarily take place on systems and servers located outside of this District. Reddick Decl. ¶ 10; Fritts Dec. ¶ 7. The '823 Patent describes, at claim 1, a system comprising one or more processors, where the processors are configured to receive a network resource request and perform identifications based on that request, and memory coupled to the one or more processors, and at claim 6, a method for receiving a network resource request and performing the same identifications. *See* FAC, p. 18-19, ¶ 53 (alleging infringement of claims 1 and 6 of the '823 Patent).⁴ The '402 Patent describes, at claim 19, a computer program product

---

[3] As a threshold matter, THD is a mere holding company that neither has a physical presence nor transacts any business in this District—it does not manage, control, or operate the Home Depot retail stores or website, does not have any involvement with its functionality, and does not sell any products or services through Home Depot's stores or online. Reddick Decl. ¶¶ 3-6, 9. THD therefore has not (because it could not have) "committed acts of infringement" in the Eastern District of Texas.

[4] Claim 1 of the '823 Patent reads, in full:
> **A system, comprising:**
>> **one or more processors configured to**:
>>> **receive a network resource request** from a client device, wherein the network resource request corresponds to a first cookie of a first type that was caused to be stored to the client device during a first previous network session, wherein the first cookie of the first type was caused to be stored to the client device at least in part by causing the client device to initiate a set of network resource requests determined during the first previous network session, wherein the client device initiating the set of network resource requests caused data representative of the set of network resource requests to be stored at the client device, wherein a second cookie of a second type different from the first type was caused to be stored at the client device during a second previous network session, and wherein the first cookie of the first type is stored in a first client device browser storage area and the second cookie of the second type is stored in a second client device browser storage area different from the first client device browser storage area;
>>> based at least in part on the network resource request from the client device corresponding to the first cookie of the first type caused to be

8

embodied in a storage medium and comprising computer instructions for determining and storing indications of interest in an advertisement, and at claim 1, a method for performing the same determinations and storage. *See id.*, pp. 34-35, ¶ 81 (alleging infringement of claims 1 and 19 of the '402 Patent).[5]  The claims of the Asserted Patents do not relate to a user interface or actions

---

> stored at the client device during the first previous network session, determine information that was encoded and stored in the client device;
> **perform a first identification** of at least one of the client device and a user of the client device using the first cookie of the first type, wherein the first identification is performed using the first cookie of the first type at least in part by using the determined information that was encoded and stored in the client device;
> **perform a second identification** of at least one of the client device and the user of the client device using the second cookie of the second type; and
> **perform a determination** based at least in part on (1) a presence of a network resource request associated with one of the first cookie and the second cookie, and (2) an absence of a network resource request associated with the other of the first cookie and the second cookie; and
>
> **a memory coupled to the one or more processors** and configured to provide the one or more processors with instructions.

[5] Claim 19 of the '402 Patent reads in full as follows:
> **A computer program product** embodied in a non-transitory computer readable storage medium and comprising computer instructions for:
>> **determining a first quality level** associated with a user profile, wherein the first quality level is based at least in part on an estimate of a likelihood of an event, wherein the first quality level is determined based at least in part on at least one of: (1) a first search associated with the user profile or (2) a first purchase associated with the user profile, and wherein the determining of the first quality level is based at least in part on a unique identifier and clustering;
>> determining, for a user associated with the user profile, an indication of interest in a first category, wherein the indication of interest in the first category is determined based at least in part on at least one of: (1) a second search associated with the user profile or (2) a second purchase associated with the user profile;
>> storing, in a record associated with the user, the indication of interest in the first category;
>> subsequent to determining the indication of interest in the first category, **determining, for the user**, that a need relative to the first category has been met based at least in part on at least one of: (1) a third search associated with the user profile or (2) a third purchase associated with the user profile;

by a user, but to server-side functionality, as they must in an attempt to avoid any allegations of divided infringement. Each of the elements of claims 1 and 6 of the '823 Patent and claims 1 and 19 of the '402 Patent is directed to functions that would be performed—if they are performed at all—by a computer system located, managed, and operated outside the Eastern District of Texas. Reddick Decl. ¶¶ 9-10; Fritts Decl. ¶ 7.

This Court has held that not *all* of the allegedly infringing activity needs to have occurred within the District, so long as *some* act of infringement took place there. *SEVEN Networks, LLC v. Google LLC,* 315 F. Supp. 3d 933, 943 (E.D. Tex. 2018) (venue found to lie in EDTX where Google servers were located in the District, and at least one step of the allegedly infringing method claims performed in the District); *accord Blackbird Techs. LLC v. Cloudflare, Inc.,* No. 17-283, 2017 WL 4543783, at *3 (D. Del. Oct. 11, 2017). The instant case is clearly distinguishable from this line of precedent on at least two grounds. First, the asserted claims in the instant case are directed solely to systems and products maintained out-of-district (and methods which rely exclusively on those systems and products), as opposed to methods which were performed partially in district. *Compare SEVEN Networks*, 315 F. Supp. 3d at 967 n. 15

---

based at least in part on the determination that the need relative to the first category has been met, determining an indication of interest in a second category wherein the indication of interest in the first category and the indication of interest in the second category comprise a sequence of related indications of interest;
in response to determining that the need relative to the first category has been met, determining a second quality level associated with the user, wherein the second quality level is determined with respect to the first category;
wherein at least one of the first quality level or the second quality level is based at least in part on a conversion assessment associated with the user profile, and wherein the conversion assessment is based at least in part on historical click behavior; and
**displaying an advertisement** to the user based at least in part on at least one of the first quality level or the second quality level.

10

(uncontroverted that Google performed at least one element of a method claim in district). Second, because Home Depot's servers are maintained elsewhere, Home Depot (unlike Google) is not attempting to read away the second prong of the venue statute by essentially claiming venue is appropriate *nowhere* since patent claim elements are performed in multiple districts. Indeed, Home Depot's reading comports with the reasoning in *TC Heartland*; venue under the second prong of the test is appropriate not only where the Home Depot defendants reside (i.e. state of incorporation), but also where the accused systems and servers sit.

Prior to the Supreme Court's ruling in *TC Heartland*, a corporate defendant was deemed to reside for purposes of venue "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced" consistent with 28 U.S.C. § 1391(c). The corporate defendant in *TC Heartland* challenged this construction, claiming that the specific patent venue statute conveyed more narrowly confined venue under *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957). The Supreme Court agreed, holding in part that the creation of the patent venue statute "placed patent infringement cases in a class by themselves, outside the scope of general venue legislation." *TC Heartland*, 581 U.S. at 264. A ruling in the instant case that venue is appropriate in EDTX would be tantamount to a return to pre- *TC Heartland* jurisprudence, in which the jurisdictional tests of minimum contacts and continuous and systematic operation within the forum state would also suffice for establishing venue. This cannot be the case, where there is no making, using, selling, or offering for sale of allegedly infringing technology in the District.

In its Amended Complaint, RavenWhite adds new allegations that "on information and belief" Home Depot has "in-store servers located in this District and/or edge servers controlled by Home Depot located in this district and elsewhere in Texas" that purportedly support its claim

11

that venue is proper.  FAC, p. 6, ¶ 20; *see generally id.*, ¶ 19-25.  But RavenWhite offers no evidence in support of these allegations that the in-store servers are tied to an act of infringement, and as the supporting declarations to this Motion show, the allegations are false.  *See Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017)  ("[w]hen a defendant submits affidavits or evidence controverting specific facts alleged in a plaintiff's complaint, a court is no longer required to accept those controverted facts as true.") (collecting cases).

      Home Depot does maintain servers in its stores, including in stores located in the EDTX—however, those servers have no network connection to Home Depot's website, Home Depot's mobile application, or any interface available to customers or through which customers interact.  Fritts Decl., ¶ 4.  Those in-store servers therefore do not receive requests, data, or cookies from customer devices and do not cause anything to be initiated, displayed, or stored on customer devices.  *Id.*, ¶ 5.  Likewise, those in-store servers do not collect information about searches or purchases made on customer devices and do not interface in any way with customer user accounts or profiles created on Home Depot's website or mobile application.  *Id*.  Simply put, there are no servers which Home Depot owns, operates, or contracts with third parties to operate in this District that perform any user advertising or client device identification functionality that the patents-in-suit claim to invent.  *Id.*, ¶ 7.  Accordingly, RavenWhite's conclusory allegations that servers in this District are used to perform alleged acts of infringement are false and should not be credited.

      RavenWhite's allegations also include "examples of the JavaScript files that clients in this District download, and a screenshot showing portions of the code in the JavaScript file named 'cookie-utils.min.js' that Home Depot provides, operates, controls, and causes clients to

12

download in this District. **After the client downloads the code, the client in this District executes that Home Depot code**…" FAC, ¶ 27 (emphasis added). But the law is abundantly clear that the relevant inquiry is directed to acts of infringement—*not to the results that an allegedly infringing act may produce*. *See* 28 U.S.C. § 1400(b); *TC Heartland*, 581 U.S. at 259-263; *see also Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1121 (Fed. Cir. 2021) ("After all, the relevant prong of § 1400(b) restricts venue to 'where the defendant has committed acts of infringement'—not where the defendant has committed acts related to (but not part of) acts of infringement."). These conclusory allegations are irrelevant to establishing venue because they are divorced from the functionality described in the claims of the Asserted Patents. *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869 (5th Cir. 2001); *see also* 28 U.S.C. § 1400(b). The actions of a client device identified by RavenWhite's allegations are not part of any alleged infringement and are nowhere claimed by the Asserted Patents. They are merely performed *after* any allegedly infringing act.[6] That the alleged computer processes that take place outside the EDTX may produce results that are useful elsewhere is irrelevant to venue here.

Because each of the elements of the claims of the patents-in-suit cited in the Complaint depends on functionality that is implemented entirely *outside* this District, none of those

---

[6] RavenWhite also alleges in conclusory fashion that the allegedly infringing acts include "conducting, directing, and controlling the operation of the Home Depot Website enabling customers to shop, locate items, and find a Home Depot retail store in this District where the customer can pick up products ordered through the Home Depot Website, or visit the Website for some other commercial purpose." FAC, p. 15, ¶ 38. And RavenWhite attempts to define "the Home Depot system" as "a system of physical stores and computer networks." FAC, p. 17, ¶ 51. But the Asserted Patents do not claim functionality relating to geolocation or specific physical retail stores, so there is no reason why the accused functionality would need to be performed by an in-store server—and as they evidence shows, it is not.

13

elements could be performed in this District.  Reddick Decl. ¶¶ 9-10; Fritts Decl. ¶ 7.  Accordingly, venue is not proper over THD or HDUSA.

## V.  CONCLUSION

Venue over both Defendants is improper because they do not reside in this District, since they are incorporated in Delaware with principal places of business in Georgia.  Venue over THD is improper because it does not have a regular and established place of business in this District.  And venue over both Defendants (and, for that matter, *any* Home Depot-affiliated entity) is improper because there can be no act of infringement committed in this District. For at least the above reasons, the Court should dismiss RavenWhite's Complaint *with prejudice*.

Dated: January 9, 2024

Respectfully submitted,

*/s/ Nicholas G. Papastavros*
Nicholas G. Papastavros
Safraz W. Ishmael
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6000
Facsimile: 617.406.6119
nick.papastavros@dlapiper.com
safraz.ishmael@us.dlapiper.com

Eric H. Findlay
Texas Bar No. 00789886
Brian Craft
Texas Bar No. 04972020
**FINDLAY CRAFT, P.C.**
7270 Crosswater Avenue, Suite B
Tyler, TX 75703
Tel: 903-534-1100
Fax: 903-534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

***ATTORNEYS FOR DEFENDANTS***

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on January 9, 2024, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.

                                                  */s/ Nicholas G. Papastavros*
                                                  Nicholas G. Papastavros